# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GORDON MITCHUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-02277-DLP-JPH |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| INDIANAPOLIS METROPOLITAN POLICE | ) | |
| DEPARTMENT, and in their official and | ) | |
| Individual capacities, the following IMPD officers: | ) | |
| RANDALL TAYLOR, MOLLY GROCE | ) | |
| , and DOES 1-50, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPLY IN SUPPORT OF SUMMARY JUDGMENT[1]**

Intent is an essential component for any Fourth Amendment claim. Officer Groce did not intend to seize Mitchum as Obi pursued the suspect who was the target of the seizure. Further, Officer Groce's actions do not shock the conscience. With no underlying constitutional violation, the Mitchum's *Monell* claim fails as a matter of law. Finally, all state law tort claims fail because the City of Indianapolis is immune and Groce cannot be sued personally under the Indiana Tort Claims Act.

---

[1] Contemporaneously with this brief, Defendants are filing a Motion to Strike Plaintiff's Expert Witnesses, and supporting brief, pursuant to the Court's Scheduling Order, dkt. 32 paragraph H.

# ARGUMENT

## I. Plaintiff cannot prevail on a Fourth Amendment seizure claim.

### A. Intent is a requirement for a Fourth Amendment Claim. Groce could not have intended for Obi to seize Mitchum, because Groce did not know of Mitchum's presence.

The Fourth Amendment addresses intentional misuses of power, not the "accidental effects" of government conduct. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989). It is therefore "clear" that a Fourth Amendment seizure does not occur when a police officer's actions happen to terminate an innocent bystander's freedom of movement. *Id.* at 596-97. Rather, a Fourth Amendment seizure occurs when freedom of movement is terminated "through means intentionally applied." *Id.* (emphasis omitted). This standard distinguishes between "an accidental or tortious act which happens to be committed by a government official" and "an intentional detention that rises to the level of a constitutional violation." *Campbell v. White*, 916 F.2d 421, 422-23 (7th Cir. 1990).

Just as in *Bublitz v. Cottey,* 327 F.3d 485 (7th Cir. 2003) Officer Groce intentionally deployed means to detain a fleeing suspect and happened to injure a person unknown to her at the time of deployment. Where *Bublitz* involved a police officer who deployed a tire-deflation system to stop a fleeing car, Officer Groce deployed her K9, Obi, to detain a possibly armed carjacking suspect. *Id.* at 487, [dkt. 79-5, CAD Dispatch Audio 3:07; dkt. 79-7, Dep. of Groce, p. 34, lines 15-19.]. A Fourth Amendment seizure must be an intentional seizure *of the plaintiff* through means intentionally applied *to the plaintiff*. *Id.* at 489 ("The Bublitz family was simply not the intended object of the defendant officers' attempts to seize the fleeing [suspect], so the Fourth Amendment is not implicated and cannot provide the basis for a § 1983 claim."). Here, Officer Groce intentionally deployed means to detain a possibly armed carjacking suspect, and was unaware of Mitchum's presence, before Obi bit him. [Dkt. 79-7, Dep. of Groce, pp. 57-58, lines 22-22.]

Therefore, the seizure was not intentional and not through means intentionally applied to Mitchum. Just as the Seventh Circuit affirmed summary judgment on the Bublitz family's Fourth Amendment claim, the Court here should grant summary judgment to the Defendants. *Id.* at 488-89.

> This Court properly followed that rubric in *Mancini v. City of Indianapolis*.
>
> The undisputed evidence is that Mancini was not the intended object of the officers' efforts to seize the fleeing suspect. Stewart's release of Scooter, intending to seize the fleeing suspect does not mean that the officers intended to seize any other person—just as in *Bublitz*, the officer's decision to set up a spike strip did not mean that the officer intended to seize just any driver that happened to drive by. *Bublitz* specifically rejected the broad reading of "intentionally applied" advanced by Plaintiffs. There are a plethora of cases which confirm that "intentionally applied" requires the intent to restrain a particular person. Accordingly, the Court finds that no seizure occurred and summary judgment is **granted** on the Fourth Amendment claim.

*Mancini v. City of Indianapolis*, No. 116CV02048TWPMJD, 2018 WL 4680188, at *8 (S.D. Ind. Sept. 28, 2018). Just as in *Mancini*, Mitchum argues that once Obi was deployed, whoever was seized was the intended target. This argument should be rejected, just as it was in *Mancini*.

Groce never intended to seize Mitchum. She did not even know of his presence until Obi encountered Mitchum and bit him. [dkt. 79-7, Dep. of Groce, pp. 57-58, lines 22-22.] Given these facts, Mitchum cannot establish that officers intentionally directed Obi to seize Mitchum. Mitchum argues that he was the target of Obi's search, as he was a human in the search area. However, Mitchum would agree that he was not the carjacking suspect whom Office Groce was sent to help locate. In sum, because Groce was not aware Mitchum was sitting on his patio around the corner, and her intention was find the potentially armed carjacking suspect, there can be no Fourth Amendment violation.

II. **Mitchum did not show that Defendants intended to cause him any harm, and that precludes his Fourteenth Amendment claim.**

Mitchum did not show that Defendants intended to cause Mitchum any harm while pursuing a fleeing suspect. Indeed, the fact that Officer Groce was not even aware of Mitchum's presence forecloses the possibility that she sought to do harm to Mitchum. Because a purpose to harm the plaintiff is an indispensable condition of substantive due process liability, the Fourteenth-Amendment claim fails as a matter of law and should be dismissed with prejudice. *See Bean*, 855 F. Supp. 2d at 865-66 (dismissing Fourteenth-Amendment claim with prejudice where allegations showed officer was pursuing fleeing suspect, not intending harm to bystander); *Winston v. City of Chicago*, 130 F. Supp. 3d 1218, 1223 (N.D. Ill. 2015) (same).

III. **Officer Groce and Chief Taylor are entitled to qualified immunity on all claims asserted against them individual capacity**

A. **Qualified immunity applies to Law Enforcement Officers**

In his Response, Mitchum argues that "[q]ualified immunity for law enforcement officers is a legal fiction." [Dkt. 87, p. 23.] That may be true enough, but the Supreme Court has continued to recognize the doctrine in dozens of published opinions over the past two decades. Indeed, the Supreme Court just issued an opinion on the doctrine's applicability. *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (per curiam). It is without question that the prevailing law of the land is that qualified immunity is applicable to law enforcement officers.

B. **Mitchum did not present a case to show that the right was clearly established.**

Qualified immunity protects police officers from civil liability "so long as their conduct does not violate *clearly established* statutory or constitutional rights that a reasonable person would know about." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (internal quotation omitted). It protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting

4

*Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once qualified immunity is raised, a plaintiff must establish both that his rights were violated and that the law concerning the proffered right was clearly established when the challenged conduct occurred. *Id.*

To show that a law was clearly established, the Court is to look to Supreme Court precedent and then Seventh Circuit decisions showing such. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). If there is not controlling precedent, the Court broadens its search to all relevant caselaw to see whether there is a clear trend and can show that it was only a matter of time for the precedent to become controlling. *Id*.

In his response, Mitchum cites two cases to show that his rights were clearly established: *Collins v. Schmidt*, 326 F. Supp. 3d 733 (D. Minn. 2018) and *Relf v. City of Troy*, 94 N.Y.S.3d 672 (App. Div. 3d Dept. 2019). First, both cases were decided after the events occurred in Mitchum. *Collins* was decided on August 9, 2018, and *Relf* was decided on February 21, 2019. It defies logic for Officer Groce and Chief Taylor to have known about the cases before they were decided.

Second, these cases do not meet the requirements under the Seventh Circuit. See *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020), *reh'g denied* ("We have conclusively stated that district court opinions cannot clearly establish a constitutional right because they are not binding precedential authority"). One district court case, and one state court case, hardly present the clear trend that it is only a matter of time for their precedent to become controlling. *Jacobs, supra*.

Further, there cannot be a "clear trend" when federal courts around the country have not even agreed on the issue. *See Bussa v. Pierce Cnty.*, No. C09-5634BHS, 2011 WL 31865 (W.D. Wash. Jan. 4, 2011) (granting summary judgment on Fourth Amendment claim because canine officer could not have intended to seize bystander plaintiff when he did not even know of bystander's presence when he deployed dog); *Dennen v. City of Duluth*, No. Civ. 00-2731

PAM/RLE, 2002 WL 832593 (D. Minn. May 1, 2002) (holding that no Fourth Amendment seizure occurred where no evidence suggested that canine officer intended his canine to seize the plaintiff); *see also Neal v. Melton*, 453 F. App'x 572, 577 (6th Cir. 2011) ("Negligence may be evident from [the officer's] failure to adequately secure [his police canine] and from [another officer's] failure to effectively grab [the dog] as he entered the vehicle, but this is not the type of intentional or knowing contact required for a § 1983 claim."). Mitchum cannot meet his burden by arguing that a district court decision from Minnesota and state court decision from New York put Officer Groce and Chief Taylor on notice that their conduct violated any clearly established rights recognized in the Seventh Circuit.

These cases are also distinguishable. In *Relf*, the dog was not on a lead while conducting an area search for two armed robbers. The dog in that case bit a person who jumped up on top of a car to get away from the dog. Because the dog in *Relf* was not on a lead, and the officer failed to provide warnings and keep the dog within visual sight, there is a larger question about whether the Plaintiff was a foreseeable person of the dog's aggression. *Relf*, 94 N.Y.S.3d at 676.

In *Collins* the dog was on 20-foot lead searching for a potential burglar in a residential neighborhood. The District Court of Minnesota determined that because the dog was on a 20 foot lead, and the officer failed to give adequate warnings, the officer did not have control of the dog and it was "unreasonable to deploy [the dog] in these circumstances and handle him in a manner that precluded suspects an opportunity to surrender and enabled innocent persons to exit the area." *Collins*, 326 F. Supp. 3d at 745. Further, the officer in *Collins* had reason to believe the suspect was already apprehended.

Unlike the dogs in *Relf* and *Collins*, Obi was on a 6-foot lead. [dkt. 79-7, Dep. of Groce, p. 50, lines 8-13.] Also unlike the officers in *Relf* and *Collins,* Officer Groce gave audible warnings

before deploying Obi. [*Id.* at 40, lines 1-6, p. 34, lines 17-18; dkt. 79-5, CAD Dispatch Audio, 6:25.] Thus, Officer Groce had more control of Obi than the officers did in *Collins* or *Relf.*

Since Officer Groce's conduct is not analogous to the officers' conduct in *Relf* and *Collins*, those precedents did not provide her with notice that her conduct violated the Mitchum's rights. Thus Mitchum has not established that she violated his clearly established rights under the Fourth or Fourteenth Amendments and he has not overcome Defendants' qualified immunity defense..

### IV.     Mitchum's Monell claim fails.

#### A.   Mitchum cannot establish a constitutional violation,

An underlying constitutional injury "is a necessary element of a *Monell* claim." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). As described in the sections above, Mitchum's constitutional claims fail and therefore his Monell claim also fails.

### V.     Plaintiff's Negligence claims fail because the City of Indianapolis is immune under the Indiana Tort Claims Act and Officer Groce is not the proper Defendant.

#### A.  IMPD is immune to claims of "negligent hiring, training, [and] supervision" of its employees.

Mitchum argues that discretionary function immunity does not apply when the conduct violates clearly established statutory or constitutional rights. [dkt. 89, pp. 28-29.] As outlined above in Section III. B. the constitutional rights at issue here were not clearly established. Because the constitutional right allegedly violated is not clearly established, the City is entitled to discretionary function immunity. *See Coleman v. Curry*, 2013 WL 5232196, at *9 (S.D. Ind. Sept. 16, 2013) ("Any state law claims of negligent training, supervision, and/or discipline are barred by the discretionary function immunity provision of the [ITCA]."); *Hudkins v. City of Indianapolis*, 2015 WL 4664592, at *24 (S.D. Ind. Aug. 6, 2015) (same); *White v. Novak*, 2013 WL 1339389, at *7-8 (S.D. Ind. April 1, 2013) (same); *Strain v. Minnick*, 2015 WL 6550628, at

*4 (S.D. Ind. Oct. 28, 2015) (same); *Smith v. Ciesielski*, 975 F. Supp. 2d 930, 942-43 (S.D. Ind. 2013) (same).

### B. Plaintiff's Count 4 Negligence claim fails because Officer Groce's conduct was not willful and wanton and therefore this negligence claim cannot be brought against her individually.

Despite attempting to describe Officer Groce's actions as willful and wanton, Mitchum did not provide an argument about why he did not plead such. Indiana Code section 34-13-3-5(c) is clear that "[a] lawsuit filed against an employee personally must *allege* that an act or omission of the employee that causes a loss is … (4) willful and wanton. (emphasis added).

Nevertheless, Officer Groce's actions were not willful and wanton. Willful or wanton misconduct consists of either: "1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204–05 (Ind. Ct. App. 2011), quoting *U.S. Auto Club, Inc. v. Smith,* 717 N.E.2d 919, 924 (Ind.Ct.App.1999) (citing *Witham v. Norfolk & W. Ry. Co.,* 561 N.E.2d 484, 486 (Ind.1990), *reh'g denied* ), *trans. denied.* The elements of willful or wanton misconduct are: "(1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." *Id.* (citing *Witham,* 561 N.E.2d at 486).

Officer Groce was unaware of Mitchum's presence as she was out searching for what she thought was an armed carjacking suspect. [Dkt. 79-7, Dep. of Groce, pp. 57-58, lines 22-22.] That alone precludes her actions to be described as willful and wanton. *Ellis supra*. Further, once she realized that Mitchum was not the suspect, she acted to remove Obi from continuing to engage

8

Mitchum. [dkt. 79-6, Dep. of Mitchum, p. 18, lines 18-19; dkt. 79-7, Dep. of Groce, p. 44, lines 5-10.] Based on the definitions above, these actions could hardly be described as willful and wanton, and summary judgment on this claim should be granted.

    **C.    The City is immune from liability under the "law enforcement immunity" provision of the Indiana Tort Claims Act ("ITCA").**

Mitchum argues that the law enforcement immunity provision of the ITCA does not apply because acts that constitute false arrest and false imprisonment claims are excluded from this position. [Dkt. 89, p. 30.] While it is true that the ITCA specifically excludes false arrest and false imprisonment claims, Mitchum did not bring false arrest or false imprisonment claims. [I.C. 34-13-3-3(8). Besides his federal claims, Mitchum brought two claims of Negligence. [Dkt. 1, pp. 6-7.] Because the ITCA is clear that claims of false arrest and false imprisonment are the only claims excluded, summary judgment on Plaintiff's negligence claims are appropriate under law enforcement immunity.

### CONCLUSION

Mitchum's injuries are an accident. An accidental injury to an innocent bystander does not give rise to Fourth or Fourteenth Amendment claims, the *Monell* claim therefore fails as a matter of law, and Defendants are immune to Plaintiff's state law negligence claims. The Defendants are entitled to judgment as a matter of law on all claims.

    Respectfully submitted,

    s/ Andrew C. Scheil

    Andrew C. Scheil (33826-49)
    Assistant Corporation Counsel
    Office of Corporation Counsel
    200 East Washington Street, Room 1601

        Indianapolis, Indiana  46204
        Telephone: (317) 327-4055
        Fax: (317) 327-3968
        E-Mail: andrew.scheil@indy.gov

*Attorney for the Defendants*

## **CERTIFICATE OF SERVICE**

I certify that this document was electronically filed on January 11, 2021. The same day, the following e-filing users were served electronically:

| | |
|---|---|
| Jonathan C. Little | Martin A. Brown |
| Derrick Morgan | John F. Kautzman |
| Annemarie Alonso | Andrew R. Duncan |
| SAEED & LITTLE, LLP | Edward J. Merchant |
| jon@sllawfirm.com | RUCKELSHAUS, KAUTZMAN, |
| derrick@sllawfirm.com | BLACKWELL & BEMIS, LLP |
| annie@sllawfirm.com | mab@rucklaw.com |
| *Attorneys for Plaintiff* | jfk@rucklaw.com |
| | ard@rucklaw.com |
| | ejm@rucklaw.com |
| | *Attorneys for Defendants Tom White, Richard Faulkner, Molly Groce and Alfred Robinson* |

/s/ Andrew C. Scheil
Andrew C. Scheil (33826-49)
Assistant Corporation Counsel